# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION |
| | : | NO. 06-329-1 |
| KEIYA MERSHON, | : | |
| Defendant. | : | |

## Memorandum and Order

YOHN, J.                                                                                               December ____, 2007

    Defendant Keiya Mershon was convicted by a jury of conspiracy to commit robbery affecting interstate commerce in violation of 18 U.S.C. § 1951(a) and attempted carjacking in violation of 18 U.S.C. § 2119. He has filed a posttrial motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c). For the reasons discussed herein, defendant's motion will be denied.

**I.     Background**

    This case arose from an attempt to hijack a Circuit City delivery truck. On June 29, 2006, a grand jury indicted defendant on two counts: (1) conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), and (2) attempted carjacking in violation of 18 U.S.C. § 2119. Codefendant Lawrence Mershon, defendant's father, was also indicted on these charges.[1]

---

[1] Lawrence pled guilty to both counts on November 30, 2006; expressed great remorse; and was sentenced on July 19, 2007.

Defendant's three-day jury trial was held in April 2007. At the close of the government's case, defendant moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a), and I denied the motion. On April 5, 2007, the jury found defendant guilty of both counts charged in the indictment. Defendant filed the current motion for a judgment of acquittal on September 21, 2007, arguing that there was insufficient evidence for a reasonable jury to conclude beyond a reasonable doubt: (1) as to count one, that he conspired with Lawrence Mershon "to take the delivery truck" by force, violence, or fear of injury; and (2) as to count two, that he intended to cause death or serious bodily harm to the truck driver. The government filed its response on September 24, 2007, arguing that both direct and circumstantial evidence could have led, and did in fact lead, a reasonable jury to conclude that defendant was guilty of both crimes charged in the indictment. The government further argues that defendant asks the court to make determinations of witness credibility and weight of the evidence that are properly left to the jury.

Viewing the evidence in the light most favorable to the government, as I must for this purpose, I conclude that the evidence was sufficient for a reasonable jury to conclude beyond a reasonable doubt that defendant conspired to commit robbery from the truck driver by force, violence, or fear of injury and that he intended to cause death or serious bodily harm to the truck driver if necessary to take the truck. Because there was sufficient evidence for a reasonable jury to find defendant guilty of both crimes charged, I will deny defendant's motion for a judgment of acquittal.

## II.  Discussion

### A.  Standard

Federal Rule of Criminal Procedure 29(c) provides that a defendant may, within seven days after the verdict, or such longer time as the court may prescribe, file a motion for a judgment of acquittal.  Fed. R. Crim. P. 29(c)(1).  The purpose of Rule 29 is to question the sufficiency of the evidence to support a conviction.  *See United States v. Cohen*, 301 F.3d 152, 156 (3d Cir. 2002).  "A defendant challenging the sufficiency of the evidence bears a heavy burden."  *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992).  Furthermore, "[a] finding of insufficiency should be confined to cases where the prosecution's failure is clear."  *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (quotation marks and citations omitted).

In reviewing the record to determine whether there was sufficient evidence to support a conviction, "the court must view the evidence and the inferences logically deducible therefrom in the light most favorable to the government, to determine if there is sufficient evidence to support the factfinder's verdict."  *United States v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1989), *cert. denied*, 493 U.S. 1987 (1990).  Moreover, "the trial court's ruling on the sufficiency of the evidence is governed by strict principles of deference to a jury's findings."  *United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir. 1984); *see also United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (providing that a court applies "a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence"), *cert. denied* 525 U.S. 1085 (1999).  "A verdict will be overruled only if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt."  *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987) (citations omitted), *cert. denied*, 490 U.S.

1070 (1989); *see also United States v. Salmon*, 944 F.2d 1106, 1113 (3d Cir. 1991) (finding that in evaluating the sufficiency of the evidence to support a conviction, the court "must determine whether a reasonable jury believing the government's evidence could find beyond a reasonable doubt that the government proved all of the elements of the offenses").

### B.     Evidence Presented at Trial

This case stems from defendant's attempted carjacking of a delivery truck containing Circuit City electronics and appliances while the truck was in the parking lot of the Spirit Delivery and Distribution ("Spirit") warehouse. Defendant was previously a contract employee for Spirit. (Trial Tr. 80:9-12, 89:8-22, Apr. 3, 2007.) Spirit contract employees are familiar with the typical delivery times, schedules, and locations. (*Id.* at 89:12-21.) Circuit City ships products from its warehouse in Brandywine, Maryland to Spirit's warehouse in Bristol, Pennsylvania. (*Id.* at 81:3-14.) The largest incoming shipments arrive at the Bristol warehouse on Tuesdays and Fridays. (*Id.* at 82:12-22.) When the products arrive at the Spirit warehouse, they are staged into individual routes, and contract drivers pick up the products and deliver them to consumers' homes. (*Id.* at 81:23-82:2.) Circuit City products shipped to Spirit are delivered to homes in Pennsylvania, New York, New Jersey, and Delaware. (*Id.* at 82:5-7.)

In June 2006, the FBI received information about a potential highjacking of a delivery truck that could involve injuries to the driver. (*Id.* at 45:23-46:20.) FBI Special Agent Albert Channell posed as an undercover goods buyer to intervene and prevent the highjacking from taking place. (*Id.* at 46:14-24.) As a part of this undercover assignment, Channell met with defendant, who was planning the highjacking, on June 8, 2006. (*Id.* at 47:11-14.) During this

meeting, Channell and defendant agreed that on Friday, June 9,[2] defendant would seize control of a Circuit City delivery truck. Defendant would sell the semitrailer, which he guaranteed would be full of televisions and appliances, to Channell for $50,000. (*Id.* at 49:13-23.) They further agreed that they would meet in South Philadelphia that Friday morning, at which time Channell would look into the trailer to ensure it was full and defendant would count the money Channell was to pay him. (*Id.* at 51:24-52:4.) Channell was to bring his own truck cab to haul the trailer, and defendant would leave with the trailer's original cab.[3] (*Id.* at 52:3-4.)

FBI agents surveilled defendant's house on Friday, June 9. Shortly after 4:00 a.m., FBI agents observed defendant exit his house and drive away in his Kia minivan. (*Id.* at 107:23-108:3.) Defendant drove to the 4500 block of Colorado Avenue, where he remained for five minutes. (*Id.* at 108:7-17.) He returned to his house, and agents saw a person enter the house and return to the vehicle three minutes later. (*Id.* at 108:18-24.) Defendant then drove to the Spirit warehouse in Bristol. (*Id.* at 109:1-24.) Defendant circled the warehouse area, and agents observed another vehicle in the same area. (*Id.* at 110:7-10.) Defendant then left the warehouse at 5:23 a.m. and made a stop in the 4500 block of Colorado Avenue, where agents saw someone "interacting with the vehicle." (*Id.* at 110:17-20.) When defendant left this location, agents ended their surveillance. (*Id.* at 110:21-22.)

The afternoon of June 9, defendant called Channell to explain that he did not carry

---

[2] Defendant told Channell he planned the transaction for a Friday because the shipment would be in preparation for the weekend and therefore would contain more products than deliveries on other days would contain. (*Id.* at 50:18-23.)

[3] A recording of the conversation from the June 8 meeting where defendant and Channell agreed to these details was played during the trial. (*See id.* at 63:20-21.)

through with the plan to take the delivery truck that morning because things looked out of place, and he did not want anyone else to get in trouble. (*Id.* at 53:23-54:3, 55:5-8.) Defendant offered to conduct a side deal during the upcoming week, but Channell responded that he would rather wait until the following Friday, when there would be another full truck. (*Id.* at 54:4-10.) Defendant agreed to carry out the plan on the following Friday, June 16.[4] (*Id.* at 54:6-12.)

FBI agents again surveilled defendant on the morning of Friday, June 16. (Trial Tr. 3:20-4:1, Apr. 4, 2007.) At 2:52 a.m., agents observed defendant's vehicle leave his house and travel south. (*Id.* at 5:1-3, 5:18-22.) The van traveled to the 4500 block of Colorado Avenue, where agents observed someone standing on the street. (*Id.* at 6:14-17.) Defendant's minivan left that area nine minutes later and traveled to Susquehanna Avenue, where it stayed for four minutes before driving in the same direction it had taken on the morning of June 9. (*Id.* at 7:8-9:12.) After the vehicle left the Susquehanna Avenue area, agents observed that two people were now in the minivan. (*Id.* at 8:11-12.) The minivan then pulled into the parking lot of Spirit's Bristol warehouse. (*Id.* at 11:5-11.)

After the minivan was parked, officers approached the vehicle and ordered the defendant and the passenger out of the vehicle. (*Id.* at 25:8-24.) The passenger was later discovered to be Lawrence Mershon, defendant's father. Officers arrested defendant and his father at the scene. When officers searched the van, they discovered gloves, a blue bag, a role of gray duct tape, and a sock with a claw hammer inside. (*Id.* at 27:7-18, 28:12-19.) Officers also observed that the minivan's license plate had been covered with duct tape. (*Id.* at 27:11-14.)

---

[4] Recordings of this conversation and of the subsequent voice mail messages and conversations that confirmed the June 16 transaction were also played during the trial. (*See id.* at 65:17-18, 66:9-10, 70:9-10, 71:16-18.)

Lawrence Mershon testified for the government at defendant's trial. Lawrence testified that he participated in the attempted robbery because he wanted to move out of his neighborhood, but he did not have the funds to do so. (*Id.* at 47:14-17.) Knowing Lawrence wanted to move but lacked the money to do so, defendant asked him if he would take advantage of an opportunity to make enough money to be able to move.[5] (*Id.* at 47:18-19.) When Lawrence asked for a clarification of what defendant was asking, defendant stated that he was considering taking a truck and selling it. (*Id.* at 47:19-22.) Defendant said "[h]e was going to grab the driver and take the driver out somewhere," and while defendant was with the driver, Lawrence was to drive the truck to a predetermined location. (*Id.* at 48:16-22.) Defendant offered Lawrence $10,000 to drive the truck. (*Id.* at 47:24-48:5.)

Lawrence was with defendant when defendant drove to the warehouse area on the morning of June 9. (*Id.* at 55:10-57:25.) Lawrence testified that when defendant drove away from the warehouse that morning, defendant explained that he had changed his mind about taking the truck because there were two different trucks with two different people in them in the area. (*Id.* at 58:7-25.) Defendant also told Lawrence that the June 9 job was an inside job. (*Id.* at 76:8-11.)

Lawrence also testified that on the morning of June 16, defendant asked him to bring a hammer. (*Id.* at 54:22-25, 62:9-18.) Defendant told Lawrence that the hammer was "[f]or the shock effect." (*Id.* at 62:17-19.) When Lawrence heard this, he warned defendant, "[d]on't put your hands on the driver." (*Id.* at 63:1-3.) Lawrence said this because he "automatically

---

[5] Defendant also told Lawrence that he wanted to take the truck because he himself needed money. (*Id.* at 50:16-24.)

assumed" defendant "was talking about popping that driver with the hammer." (*Id.* at 63:4-8.) He did not want the driver to be injured and told defendant he would leave the scene if defendant put his hands on the driver. (*Id.* at 63:8, 69:1-9.) Despite his wishes, Lawrence was not certain whether defendant would injure the driver. (*Id.* at 78:24-79:2.) Lawrence was worried about what defendant might do. (*Id.* at 79:4-19.)

Lawrence had been a truck driver for approximately fifteen years. (*Id.* at 76:23-25.) On cross-examination, he noted that sometimes the semitrailers on the trucks he drove would be sealed or locked, and as the driver, he would not always have the equipment or keys necessary to open the semitrailer. (*Id.* at 77:12-21.) Lawrence hoped that defendant wanted the hammer to break open the lock, but defendant never told him what the hammer was for. (*Id.* at 81:7-12, 81:20-23.)

The arrest in June 2006 was not the first time defendant had been arrested in connection with robbing a Spirit delivery truck. On May 20, 2006, defendant was arrested in Milltown, New Jersey for stealing a Home Depot delivery truck from Spirit.[6] (*Id.* at 15:9-17:2.) The driver of the stolen truck was also eventually arrested in connection with the incident. (*Id.* at 17:3-10.) When police questioned defendant about this May 2006 incident, he told them he had planned it with the driver of the stolen truck. (*Id.* at 18:24-19:2.)

---

[6] This evidence was admitted solely with reference to defendant's motive in connection with the June attempted carjacking, and the jury was so instructed. (*See* Trial Tr. 21:3-13, Apr. 4, 2007; Trial Tr. 66:14-17, Apr. 5, 2007.)

**C.     A Reasonable Jury Could Have Concluded that Defendant Conspired to Commit Robbery by Force, Violence, or Fear of Injury and that He Intended to Cause Death or Serious Bodily Harm to the Truck Driver in Connection with the Attempted Carjacking**

At trial, the government had the burden of proving beyond a reasonable doubt all of the elements of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and attempted carjacking in violation of 18 U.S.C. § 2119.  "[T]he primary elements of a Hobbs Act violation are (1) that the defendants induce their victims to part with property; (2) that the defendants do so through the use of fear; and (3) that, in so doing, the defendants adversely affect interstate commerce."[7]  *United States v. Local 560 of the Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, and Helpers of Am.*, 780 F.2d 267, 281 (3d Cir. 1985) (citing *United States v. Addonizio*, 451 F.2d 49, 59 (3d Cir.1971)).  Because the indictment charged that defendant

---

[7] The relevant portions of 18 U.S.C. § 1951 provide:
 (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
 (b) As used in this section--
  (1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.
  . . . .
  (3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

conspired to commit Hobbs Act robbery, the government did not have to prove that defendant committed all of the acts necessary for a robbery, but it did have to prove the existence of a conspiracy or agreement to commit those acts. "The essential elements of conspiracy are (1) a shared unity of purpose, (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal." *United States v. Perez*, 280 F.3d 318, 342 (3d Cir. 2002) (internal quotations and citations omitted). "Although each element of a criminal conspiracy must be proven beyond a reasonable doubt, each may be proven entirely by circumstantial evidence." *United States v. Applewhaite*, 195 F.3d 679, 683 (3d Cir. 1999) (citing *United States v. McGlory*, 968 F.2d 309, 321 (3d Cir.1992)).

    The elements of carjacking in violation of § 2119[8] require the government to "prove that the defendant (1) with intent to cause death or serious bodily harm (2) took a motor vehicle (3) that had been transported, shipped or received in interstate or foreign commerce (4) from the person or presence of another (5) by force and violence or intimidation." *United States v. Augustin*, 376 F.3d 135, 139-40 (3d Cir. 2004). The intent element "requires the Government to prove beyond a reasonable doubt that the defendant would have at least attempted to seriously harm or kill the driver if that action had been necessary to complete the taking of the car." *Holloway v. United States*, 526 U.S. 1, 11-12 (1999). Thus, the intent element can be proven by either unconditional or conditional intent. *See id.* at 6-7; *Applewhaite*, 105 F.3d at 685. Again, because defendant was indicted for attempted carjacking, the government's evidence did not

---

[8] Section 2119 provides that it is unlawful for a person, "with the intent to cause death or serious bodily harm[, to] take[] a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation."

need to show that he committed all of the acts necessary for a carjacking, but it did have to prove that he attempted to do so. The government's evidence of an attempted carjacking had to show that "defendant (1) acted with the requisite intent to violate the statute, and (2) performed an act that, under the circumstances as he believes them to be, constitutes a substantial step in the commission of the crime" of carjacking. *United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006).

Defendant disputes the jury's findings regarding the intent elements of the two crimes with which he was charged.[9] He contends that, at most, the evidence established that it was an inside job, and this precludes finding that he conspired with his father to commit the robbery by force, violence, or fear of injury and that he intended to cause death or serious bodily harm to the truck driver. First, defendant reasons that Lawrence's testimony that he did not want the driver to be injured demonstrates that Lawrence did not agree to use force or violence in taking the truck; therefore, the government did not establish an agreement or mutual objective as required by conspiracy.

Defendant also disputes the inference the jury reached regarding the hammer. He argues that it is circumstantial evidence and that it is the only evidence which shows an intent to harm; thus, the inference that defendant would have used it to injure the driver is incorrect in light of all of the other evidence that shows the attempted robbery was an inside job. He also argues that Lawrence's testimony regarding the locks and seals used on semitrailers clearly shows that the

---

[9] The arguments that defendant puts forth in this motion for a judgment of acquittal are the same theories defense counsel presented to the jury in closing arguments at trial. They are also the same theories argued in defendant's Rule 29(a) motion at the close of the government's case.

hammer was needed to break open the trailer, not to harm the driver. He further reasons that if he intended to take the truck by force, he would have brought the hammer with him on June 9 and he "would have chosen a more logical weapon such as a knife or firearm." (Def. Mot. for J. Acquittal at 16.)

Finally, to provide further support for his contention that the attempted robbery was actually an inside job, defendant argues that his statements to his father when leaving the warehouse on June 9—that he was leaving because there were two trucks and two drivers—demonstrate that he had an agreement with certain drivers and would only take their trucks. Defendant also argues that he would not have exposed himself to the risks associated with committing two "jobs" in one week if he did not have inside cooperation.

Contrary to what defendant argues, Lawrence Mershon's testimony that he did not want the driver harmed does not preclude a jury from concluding that defendant conspired with Lawrence to commit robbery. The crime is the agreement. Significantly, Lawrence's testimony included statements showing that he believed defendant intended to harm the truck driver. (*See, e.g.*, Trial Tr. 48:19-20, Apr. 4, 2007 (defendant told Lawrence "[h]e was going to grab the driver and take the driver out somewhere"), *id.* at 62:17-19 (defendant told Lawrence the hammer was "[f]or the shock effect"), *id.* at 63:1-3 (Lawrence "automatically assumed" defendant "was talking about popping that driver with the hammer"), *id.* at 79:3-19 (Lawrence "was worried about what [defendant] might do" with the hammer).) Moreover, the necessary finding of an agreement between defendant and Lawrence is fortified by the fact that defendant requested Lawrence to obtain the hammer for the event and Lawrence did so. In addition, defendant did not request a hammer the prior week when defendant told Lawrence it was an inside job, which a

reasonable jury could conclude meant that defendant intended to use the hammer to harm the driver on June 16, 2006, when defendant did not state that it was an inside job. Thus, a reasonable jury could infer from Lawrence's testimony that there was a conspiracy to commit robbery by actual or threatened force, violence, or fear of injury. *See United States v. Helbling*, 209 F.3d 226, 238 (3d Cir. 2000) (concluding that codefendants' testimony that they did not intend to commit unlawful acts did not preclude the jury from finding there was a conspiracy agreement between the parties because the codefendants' testimony included other statements that allowed the jury to infer they "had the necessary intent and knowledge regardless of their statements to the contrary").

With reference to the attempted carjacking charge, defendant clearly took "substantial steps" toward committing the crime. Defendant's argument that the jury should not have inferred that he intended to use the hammer to seriously harm the driver, a necessary element of carjacking, but instead should have inferred that he had the hammer to break open the semitrailer and verify the goods inside, simply reiterates the argument he presented to the jury at trial. The jury did not accept this argument. Defendant's argument is not enough to overcome the heavy burden he has in showing that the evidence was insufficient to support a guilty verdict. Based on Lawrence's testimony and the presence of the hammer in defendant's vehicle, it was reasonable for the jury to conclude beyond a reasonable doubt that defendant intended to use the hammer to take the truck by force and violence or intimidation and that he intended to cause death or serious bodily harm to the driver if necessary to take the truck. The fact that there were two explanations given for the presence of the hammer does not preclude the jury's reasonable conclusion that defendant intended to use the hammer to harm the driver. *See United States v. Davis*, 183 F.3d

231, 238 (3d Cir. 1999) ("The jury may make reasonable inferences from the evidence presented; the evidence need not unequivocally point to the defendant's guilt as long as it permits the jury to find the defendant guilty beyond a reasonable doubt.").

Finally, to the extent defendant argues the court must assess the credibility of the witnesses and the weight of the evidence to determine whether the jury made the correct inference regarding defendant's intended use of the hammer and whether this was an inside job, his motion must be denied. At trial, the jury weighed the evidence and assessed the credibility of the witnesses before finding defendant guilty beyond a reasonable doubt of both crimes charged. The court's judgment cannot be substituted for that of the jury, and the court cannot weigh the evidence or assess the credibility of the witnesses when the court decides the merits of this motion. *See Burks v. United States*, 437 U.S. 1, 16 (1978) ("[T]he trial court . . . is not to weigh the evidence or assess the credibility of witnesses when it judges the merits of a motion for acquittal."); *Brodie*, 403 F.3d at 133 ("Courts must be ever vigilant in the context of [Rule 29] not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." (citations omitted)).[10]

---

[10] On November 13, 2007, I received a letter from defendant asking me to consider three specific cases when deciding this motion. Defendant believes *United States v. Santos*, 425 F.3d 86 (2d Cir. 2005), supports his argument that there was insufficient evidence for a jury to convict him of conspiracy to commit Hobbs Act robbery and that *United States v. Holloway*, 526 U.S. 1 (1999), and *United States v. Applewhaite*, 195 F.3d 679 (3d Cir. 1999), support his argument that there was insufficient evidence to convict him of attempted carjacking in violation of 18 U.S.C. § 2119.

The *Santos* case cited by defendant was amended by the Second Circuit's subsequent opinion in the same case, which is published at 499 F.3d 93 (2d Cir. 2006). Therefore, I will refer to the subsequent opinion. The *Santos* defendants were convicted of, inter alia, conspiracy to commit Hobbs Act robbery. To show conspiracy, the government had to prove (1) the existence of a conspiracy, and (2) that the defendants knowingly participated in the conspiracy. *Id.* at 96-97. The court concluded that one defendant's "mere presence" at the scene did not

Viewing the evidence presented at trial in the light most favorable to the government, I conclude that there is sufficient evidence for a reasonable jury to find that defendant was guilty beyond a reasonable doubt of conspiracy to commit Hobbs Act robbery and attempted carjacking. His motion for a judgment of acquittal will be denied.

### III.    Conclusion

For the foregoing reasons, I conclude that there was sufficient evidence for a reasonable jury to find, beyond a reasonable doubt, that defendant conspired to commit robbery by force, violence, or fear of injury as required by 18 U.S.C. § 1951(a) and that in connection with the attempted carjacking, he intended to cause death or serious bodily harm to the truck driver, if necessary to take the truck, as required by 18 U.S.C. § 2119. A reasonable jury therefore could have found that defendant was guilty beyond a reasonable doubt of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and of attempted carjacking in violation of 18

---

satisfy the knowing participation element as to that defendant because he did not actually *participate* in the conspiracy. *See id.* at 104. Even if *Santos* were controlling authority, it would not support defendant's motion. In defendant's case, as discussed above, there is sufficient evidence for a reasonable jury to conclude that a conspiracy existed and that both defendants knowingly participated in the conspiracy. The testimony presented established that both defendant and Lawrence participated in making the plans. Furthermore, even if Lawrence did not know specifically what defendant planned to do with the hammer, it was clear that he assumed defendant planned to use it to threaten or injure the driver, and it was Lawrence himself who brought the hammer at defendant's request. Thus, both the existence of a conspiracy and the knowing participation elements are satisfied.

Defendant argues that *Holloway* and *Applewhaite* show that both conditional and unconditional intent satisfy § 2119. Although defendant is correct that either conditional or unconditional intent satisfies § 2119, this does not lead to the conclusion that defendant's motion for a judgment of acquittal must be granted. There was sufficient evidence presented at trial for a reasonable jury to conclude beyond a reasonable doubt that when defendant attempted the carjacking, he had the conditional intent to threaten or employ force, if necessary, to take the truck. Therefore, *Holloway* and *Applewhaite* do not lead to the conclusion that defendant did not have the requisite conditional intent.

U.S.C. § 2119.  Defendant's motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) will be denied.

    An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
|  | : | |
| v. | : | CRIMINAL ACTION |
|  | : | NO. 06-329-1 |
| KEIYA MERSHON, | : | |
| Defendant. | : | |

# ORDER

And now, this _____ day of December 2007, upon careful consideration of defendant Keiya Mershon's posttrial motion for a judgment of acquittal (Docket No. 93) and the government's response thereto, IT IS HEREBY ORDERED that the motion is DENIED.

IT IS FURTHER ORDERED that defendant's sentencing is scheduled for Tuesday, January 15, 2008 at 3:00 p.m.

                                                                                         s/ William H. Yohn Jr.
                                                                    William H. Yohn Jr., Judge