# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | : | CRIMINAL ACTION |
| v. | : | NO. 06-329-1 |
| KEIYA MERSHON, Defendant | : | CIVIL ACTION |
| | : | NO. 10-1861 |

**Memorandum**

YOHN, J.                                                                                                                                 October __, 2010

Defendant Keiya Mershon has filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 ("§ 2255 motion"). Defendant presents seven claims alleging due process violations, Sixth Amendment violations, judicial misconduct, actual innocence, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel. For the reasons set forth below, I will deny the motion without an evidentiary hearing.

**I. Factual and Procedural History**

This case arises from defendant's attempted carjacking of a Circuit City delivery truck containing electronics from a parking lot of the Spirit Delivery and Distribution ("Spirit") warehouse on June 16, 2006. Defendant was at one time a Spirit employee and therefore likely familiar with delivery times, schedules, and locations. In June 2006, the FBI received information from a reliable confidential informant about a potential hijacking of a delivery truck. On June 8, FBI Special Agent Albert Channell, posing as an undercover buyer, met with defendant, who was planning the carjacking. In a taped conversation, they agreed that on Friday

1

June 9, defendant would seize the truck, which defendant guaranteed would be full of televisions because it was the weekend delivery, and sell the goods to Special Agent Channell for $50,000.

The FBI surveilled defendant on June 9 and observed him leaving his house around 4:00 a.m. He drove to the Spirit warehouse, after a coupe of stops, with two passengers in the car. He circled around the warehouse but left soon after. That afternoon, he called Special Agent Channell and explained that his plan was foiled because things looked out of place and he did not want anyone else, presumably his passengers, to get in trouble. They agreed that defendant would try again on Friday, June 16.

The defendant returned to the Spirit warehouse on June 16 as planned. The FBI again surveilled him that morning as he left his house in a minivan at 2:52 a.m. and drove to the warehouse with only one passenger. The Circuit City truck had not yet arrived at the warehouse. After defendant parked the minivan, officers approached the van and ordered the defendant and passenger, who was later identified as Lawrence Mershon, defendant's father, out of the vehicle. Officers searching the van found gloves, a blue bag, a roll of gray duct tape, and a sock with a claw hammer inside. The officers also observed that the minivan's license plate was covered with duct tape.

On June 29, 2006, a grand jury indicted defendant on two counts: (1) conspiracy to commit Hobbs Act robbery in violation of U.S.C. § 1951(a), and (2) attempted carjacking in violation of 18 U.S.C. § 2119.[1] Defendant had a three-day jury trial in April 2007. Lawrence Mershon testified for the government at trial. He testified that defendant offered him $10,000 to

---

[1] Co-defendant Lawrence Mershon was also indicted on the same charges. He pleaded guilty to both counts on November 30, 2006.

drive the truck from the warehouse to a predetermined location while the defendant "was going to grab the driver and take the driver out somewhere." Lawrence testified that defendant told him that the June 9 job was an inside job and that they drove away that morning because there were two different trucks with two different drivers in the area at that time. He also testified that defendant requested he bring a hammer on June 16 for the "shock effect." Lawrence admitted that he assumed the defendant would use the hammer to hurt the driver but testified that he told the defendant not to harm the driver and that he would not remain on the scene if any violence occurred. Lawrence also testified that he knew from his experience as a truck driver for fifteen years that some semitrailers were sealed or locked; he hoped that the hammer was needed to break open the lock, rather than hurt the driver.

At the close of the government's case, defendant moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a), and I denied the motion. On April 5, 2007, the jury found defendant guilty of both counts charged in the indictment. Defendant then filed a motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) ("Rule 29 motion"on September 24, 2007, arguing that there was insufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that he conspired with co-defendant Lawrence Mershon to take the delivery truck by force, violence, or fear of injury, or that he intended to cause death or serious bodily harm to the truck driver. I denied the defendant's motion, concluding that there was sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that defendant was guilty of *conspiracy* to commit robbery and *attempted* carjacking.

On January 29, 2008, I sentenced defendant to ninety months' imprisonment, three years of supervised release, a special assessment of $200, and a fine of $1000. I applied two

Sentencing Guidelines enhancements: (1) a two-level enhancement under U.S.S.G. § 2B3.1(b)(7)(C) based on my determination that a loss from $50,000 to $250,000 would have occurred if defendant had completed the robbery, and (2) a three-level enhancement under U.S.S.G. § 2B3.1(b)(2)(E) for possessing a dangerous weapon, which in this case was the hammer. Defendant filed a timely notice of appeal on January 30, 2008. The only issue raised in defendant's appeal was whether I erred in applying an enhancement under U.S.S.G. § 2B3.1(b)(7)(C) based on my determination of loss. *United States v. Mershon*, 322 F.App'x. 232, 233 (3d Cir. 2009). The Third Circuit affirmed the sentence concluding that no clear error was committed in calculating the intended loss or applying the enhancement in defendant's sentencing. *Id*. at 240. Defendant timely filed this § 2255 motion on April 28, 2010.

## II. Legal Standards

"In order to prevail on a Section 2255 motion, the movant's claimed errors of law must be constitutional, jurisdictional, 'a fundamental defect which inherently results in a complete miscarriage of justice,' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *United States v. Williams*, No. 09-5154, 2010 U.S. Dist. LEXIS 40912, at *5 (E.D. Pa. Apr. 26, 2010) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). When a prisoner files a § 2255 motion, the district court may dismiss the motion without an evidentiary hearing if "the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989) (citation omitted). In making this determination, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Id.*

Defendant is procedurally barred under § 2255 from raising claims that have been

4

previously litigated and decided adversely to the petitioner on trial and on direct appeal. *United States v. Karimi*, No. 34-369-1, 1997 U.S. Dist. LEXIS 5008, at *4 (E.D. Pa. April 11, 1997) (citing *United States v. Orujuela*, 639 F. 2d 1055, 1057 (3d Cir. 1981)). A petitioner is also barred "from bringing any claims on collateral review which could have been, but were not, raised on direct review." *Irrizari v. United States*, 153 F. Supp. 2d 722, 726 (E.D. Pa. 2001) (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998), and *United States v. Biberfeld*, 957 F.2d 98, 104 (3d Cir. 1992)). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 622 *(internal citations omitted)*. To show cause, petitioner must demonstrate "something external to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). While constitutionally ineffective assistance of counsel is cause, attorney error that does not rise to the level of constitutional ineffectiveness is not. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991). A petitioner may show prejudice if the alleged error "worked to his *actual* and substantial disadvantage." *Murray v. Carrier*, 477 U.S. 478, 494 (1986). There is no procedural default for failure to raise ineffective-assistance claims on direct appeal. *United States v. Sanchez-Mercedes*, No. 06-CR-115-1, 2009 U.S. Dist. LEXIS 110493 (E.D. Pa. Nov. 24, 2009) (citing *Massaro v. United States*, 538 U.S. 500, 503-04 (2003)).

**III. Discussion**

Defendant asserts seven claims: (1) he is actually innocent of both crimes; (2) this court engaged in judicial misconduct; (3) his sentencing was improperly enhanced based on the determination of loss; (4) his sentencing was improperly enhanced for possession of a dangerous

5

weapon; (5) he was denied due process because the prosecutor made improper comments in his closing argument at trial and presented alleged perjured testimony to the grand jury; (6) trial counsel was ineffective; and (7) appellate counsel was ineffective. Defendant seeks an evidentiary hearing in order to advance these claims.

**A. Actual Innocence**

Defendant brings two claims of actual innocence: (1) he is innocent of attempted carjacking because he was arrested immediately after arriving at an empty warehouse parking lot, where no delivery truck was present; and (2) he is innocent of conspiracy to commit Hobbs Act robbery because there was no agreement to take the truck by threat of force or violence as his co-defendant, Lawrence Mershon, testified that it was an "inside job" and that he, Lawrence, did not want to harm the driver. (Def.'s Mot. 9, 16-17.) These claims of actual innocence reflect arguments that were sufficiently addressed and denied in his Rule 29 motion. *United States v. Mershon*, No. 06-329-1, 2007 U.S. Dist. LEXIS 91534 (E.D. Pa. Dec. 13, 2007). Defendant could have also litigated these claims on direct appeal, but did not. Defendant does not argue that there was cause for failing to do so and cannot establish actual prejudice as a result. Therefore, these claims are procedurally defaulted. In addition, defendant fails to establish that a collateral attack on the judgment is necessary to cure a "fundamental defect which inherently results in a complete miscarriage of justice," and is thus barred from bringing these claims. *See Williams*, 2010 U.S. Dist. LEXIS 40912, at *5 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

In the first claim of innocence, defendant misconstrues the actual charge against him. Defendant was convicted of attempted carjacking, which is an incomplete offense and requires only that "defendant (1) acted with the requisite intent to violate the statute, and (2) performed an

act that, under the circumstances as he believes them to be, constitute a substantial step in the commission of the crime" of carjacking. *United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006). The delivery truck did not need to be at the parking lot before he arrived to establish that defendant intended to carjack the truck and took substantial steps to that end. There was sufficient evidence presented at trial of numerous substantial steps taken by defendant, including his conversation with the undercover FBI agent to arrange a sale of the stolen goods, his conversations with his father to recruit him as the driver, his prior trip to the parking lot, and his trip to the parking lot the morning that he was arrested. Whether the truck was present, so that he could have begun the carjacking immediately, or it had not yet arrived so that he had to park and wait for it, is irrelevant. By the time defendant arrived at the parking lot on June 16, he evinced an intent to carjack and had already taken many substantial steps toward completing the crime.

The second claim of innocence is also in conflict with the evidence presented at trial. Lawrence Mershon's entire testimony does not refute, but rather supports finding that they had an agreement to commit robbery.[2] Lawrence Mershon indeed testified that defendant told him on June 9 that it was an inside job. Transcript of Jury Trial ("Trial Tr."), 4/4/2007, 75:23-25, 76:8-11. He also testified that he did not want to participate in any violence and would leave if any

---

[2] "[T]he primary elements of a Hobbs Act violation are that (1) that the defendants induce their victims to part with property; (2) that the defendants do so through the use of fear; and (3) that, in so doing, the defendant[] adversely affect interstate commerce." *United States v. Local 560 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, and Helpers of Am.*, 780 F.2d 267, 281 (3d Cir. 1985). Defendant was charged with conspiracy to commit Hobbs Act robbery, which means that the government did not have to prove that he completed all of the necessary acts, but that there was a conspiracy, or agreement, to do so. "The essential elements of conspiracy are (1) a shared unity of purpose, (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal." *United States v. Perez*, 280 F.3d 318, 342 (3d Cir. 2002) (internal quotations and citations omitted).

ensued. *Id*. at 63:8, 69:1-9. Lawrence admitted, however, that defendant requested the claw hammer for "shock effect"; he "automatically assumed" that defendant "was talking about popping the driver with the hammer" and was "worried about what [defendant] might do." *Id*. at 62:17-19, 63:4-8, 79:4-19. Although Lawrence Mershon hoped no violence would occur, his testimony establishes that he agreed to participate in hijacking the truck and even supplied the claw hammer while knowing that defendant might use it to injure the driver. His statements suggesting that there might have been a third party involved or that he did not want the driver harmed do not negate the conclusion that they conspired to commit robbery.

**B. Judicial Misconduct**

Defendant asserts that the court committed judicial misconduct by failing to declare a mistrial when the jury was polled and a juror allegedly said that he did not agree with the verdict, and by denying defendant's Rule 29 motion. (Def.'s Mot. 10, 17.) Both of these issues could have been raised on direct appeal, but were not. They are therefore also procedurally defaulted. Defendant claims that his failure to raise these issues on direct appeal was due to appellate counsel's ineffectiveness. But defendant does not allege that counsel's error rises to the level of constitutional ineffectiveness. Thus, defendant has not sufficiently established cause or made any showing of actual prejudice to overcome the procedural default.

Even if not procedurally defaulted, both claims of judicial misconduct lack merit. First, defendant's first claim is factually incorrect because the jury's decision was indeed unanimous. The trial transcript contains a typographical error in which a juror disagrees with the verdict, but

8

that statement was corrected, albeit informally, by a post-it note adhered to the page.[3] More importantly, after all the jurors were polled, the court went on to say that the verdict "has been confirmed by each of the twelve jurors." Trial Tr., 4/5/2007, 123:11-14. The government and defense trial counsel also recall the verdict being unanimous. (Govt.'s Resp. 15.) Indeed, had any juror stated disagreement with the verdict, I would have sent the jury back for further deliberation.

Secondly, defendant's claims do not constitute judicial misconduct. "To obtain habeas corpus relief on a challenge based on judicial misconduct, petitioner must show actual bias, that the judge treated him unfairly." *Marshall v. Hendricks*, 103 F. Supp. 2d 749, 799 (D. N.J. 2000) (citing *Johnston v. Love*, 940 F. Supp. 738, 774 (E.D. Pa. 1996)). An adverse ruling to the defense is not sufficient to show bias. *Id*. Here, failure to declare a mistrial and denying petitioner's Rule 29 motion do not constitute judicial misconduct because defendant has made no showing of actual, unfair bias.

**C. Sentence Enhancements**

Defendant claims that his Sixth Amendment rights were violated at sentencing when his sentence was enhanced for (1) possessing a claw hammer that was found in his minivan due to a statement by a confidential informant, which the jury never heard, and (2) the value of the truck and its contents when no evidence of a truck or its contents was presented to the jury. (Def.'s

---

[3] The trial transcript contains the following exchange:
> COURTROOM DEPUTY: Juror number three, do you agree with the verdict as stated in open court, yes or no?
> JUROR NO. 3: No.

There is a handwritten post-it note, however, which states "Typo - Juror No. 3 actually said 'Yes.'" Trial Tr., 4/5/2007, at 123:11-14.

9

Mot. 17.) Defendant's Sixth Amendment claims are procedurally barred.

Defendant argued against the sentence enhancement for possessing the claw hammer at his sentencing hearing, but did not raise the issue on direct appeal. Defendant makes no showing of cause for failing to do so or actual prejudice as a result. The issue is therefore procedurally defaulted.

Defendant, however, did challenge the sentence enhancement based on the value of the truck and its goods on direct appeal. The Third Circuit concluded that no clear error was committed in calculating the intended loss or applying the enhancement in defendant's sentencing. *Mershon*, 322 F.App'x. at 233. This issue has been previously litigated and therefore cannot be raised here.

### D. Due Process Violations

Defendant claims that the prosecutor violated his due process rights by making improper statements during his closing argument that were "so prejudicial and manipulating that they overshadowed the actual evidence," and presenting perjured testimony to the grand jury. (Def.'s Mot. 18.) Defendant did not raise any due process claims in his direct appeal. Defendant does not make any allegations to establish cause for failing to do so or actual prejudice as a result. All due process claims are therefore procedurally defaulted.

Defendant's due process claims fail on substantive grounds as well. Defendant alleges that the prosecutor misstated the evidence that was actually presented at trial during his closing argument by asserting that (1) a delivery truck was present at the scene when defendant was arrested and (2) defendant's father actually testified that he agreed to hijack a truck. (Def.'s Mot. 18.) When reviewing a habeas claim based on prosecutorial misconduct, "'[t]he relevant question

is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Velez v. Fulcomer*, No. 87-7522, 1990 U.S. Dist. LEXIS 8113, at *3 (E.D. Pa. June 20, 1990) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "We must consider the prosecutor's argument 'in the context of the facts and circumstances of the case.'" *Id*. at *4 (quoting *Darden*, 477 U.S. at 183 n.15).

Contrary to defendant's claim, the prosecutor never stated that the delivery truck was actually present at the scene when defendant was arrested. In fact, the prosecutor insisted in closing argument that the "car-jacking wasn't completed, the truck had not yet arrived." Trial Tr., 4/5/2007, 18:1-2. In his rebuttal argument, the prosecutor clarified this point when he stated, "There is no evidence, I submit to you, that there was a truck present when he pulled into the parking lot, he was waiting for the truck." *Id*. at 52:20-22. The prosecutor did not falsify the evidence regarding the presence of the delivery truck. Even if the prosecutor had made such a misstatement, there would be no due process violation because the presence of the truck was irrelevant to the crimes with which defendant was actually charged. By the time defendant arrived at the parking lot, regardless of whether a truck was present, he had already made the agreement to commit robbery and took substantial steps toward carjacking. Thus, any inaccurate statement regarding the presence of the delivery truck could not have "infected the trial with unfairness." *See Velez*, 1990 U.S. Dist. LEXIS 8113, at *3.

Likewise, the prosecutor did not commit prosecutorial misconduct when he summarized Lawrence Mershon's testimony during his closing argument. Defendant argues that the prosecutor told the jury that "defendant's co-defendant said he agreed to hi-jack a truck ... giving the jury the illusion that a hi-jacking was agreed upon." Defendant insists that Lawrence Mershon

never testified to such an agreement but "stated several times he believed everything was a [sic] 'inside job and that the driver was in on it.'"(Def.'s Mot. 17.) Defendant's summary of Lawrence Mershon's testimony and the prosecutor's subsequent statements, however, is incorrect.

Lawrence Mershon testified that he agreed to drive the stolen goods to a predetermined location. He testified that he did not have any specific information about the driver of the delivery truck that they planned to hijack on June 16, including whether the driver had any role in the crime. Trial Tr., 4/4/2007, 53:13-15. He also stated that he was uncertain what defendant planned to do with the hammer or the driver but suspected that violence could occur. Trial Tr., 4/4/2007, 36:4-8, 78:24-79:2, 79:4-19. During closing, the prosecutor directed the jury, "We had the defendant's own father who came in here and said, yeah, I had an agreement with the defendant to rob a truck." Trial Tr., 4/5/2007, 19:19-21. The prosecutor's summary of the testimony is not improper, especially when read in context with other statements in his closing argument. Lawrence Mershon admitted that he agreed to participate in defendant's plan to steal the truck. As to the possible use of force, which may be implicit in the term "rob," the prosecutor clarified in the rebuttal argument that

> each person ... in the conspiracy does not have to be aware of every detail. In other words, if they had an agreement to take this truck or take a truck by force, the defendant does not have to tell his father all the different things he is going do [sic] or how he's going to do them. They don't have to agree on every single detail to conspiracy.

*Id*. at 59:8-16. Even if Lawrence Mershon did not explicitly agree to the use of force, he was aware that defendant may have intended to use violence if necessary. The prosecutor also presented other evidence to establish that defendant intended to take the delivery truck by force. Prosecutor's statement, taken in context, is a reasonable summary of the testimony and certainly

12

did not "infect the trial with unfairness." *See Velez*, 1990 U.S. Dist. LEXIS 8113, at *3.

Defendant also alleges that the prosecutor presented perjured testimony to the grand jury. Defendant claims that the "[u]ndercover agent took the stand and told Grand Jury that defendant told him he was going to hi-jack a truck but in trial said that defendant never told him that." (Def.'s Mot. 18.) That is not an accurate account of what occurred in the Grand Jury or at trial. Undercover Agent Albert Channell did not testify before the grand jury. The only witness presented at the Grand Jury was FBI Agent Bastian Freund, the case agent who was in charge of the investigation. Agent Freund testified that a confidential source informed the FBI that defendant was planning to hijack a delivery truck and may intend to harm the driver. Grand Jury Tr., 6/29/2006, 3:5-9. Agent Freund did not claim that defendant explicitly stated his intentions to the undercover agent. *Id*. at 32:21-25, 33:11-19.

At trial, Agent Freund testified about organizing the investigation of defendant and the events of June 16 when they arrested defendant; he did not mention the statements by the confidential informant or whether defendant ever stated that he planned to hijack a truck. Trial Tr., 4/4/2007, 82:16-104:21. Undercover Agent Channell also testified at trial but made no statement regarding whether defendant explicitly told him he was going to hijack a truck. Trial Tr., 4/5/2007, 47:11-67:19, 69:8-77:21. He testified as to the meeting and phone conversations he had with defendant and recorded conversations were played for the jury to hear. *Id*.

Even if there was a discrepancy in the grand jury and trial testimony as defendant described, there would be no due process violation. A due process violation occurs only if the prosecutor willfully presents false evidence, such as perjured testimony. *United States v. Ferrell*, No. 09-cv-4294, 2010 U.S. Dist. LEXIS 39791, at *4 (E.D. Pa. Apr. 21, 2010) (citing *Mooney v.*

13

*Holohan*, 294 U.S. 103, 112 (1935)). "In order to constitute perjury, and thereby rise to a Fifth Amendment concern, the presentation of the false statement must be willful." *Id*. at *5. The mere presence of inconsistent statements, however, does not establish that the prosecutor willfully presented perjured testimony. Defendant does not allege that the prosecutor knowingly presented false evidence to the grand jury to procure an indictment. Inconsistent testimony may create an opportunity for cross examination, but there was no prosecutorial misconduct before the grand jury or at trial that resulted in due process violations.

### E. Ineffective Assistance of Counsel

Plaintiff asserts that his trial and appellate counsel both provided ineffective assistance. To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) his attorney's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, a defendant must show that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 688). To prove prejudice, a defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," *id.* at 693; rather, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. Reasonable probability means "a probability 'sufficient to undermine confidence in the outcome.'" *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (quoting *Hull v. Kyler*, 190 F.3d 88, 110 (3d Cir. 1999)).

The Supreme Court has explained that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. A "court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the defendant has the burden of overcoming "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

**1. Trial Counsel Did Not Provide Ineffective Assistance**

Defendant claims that he suffered from ineffective assistance because trial counsel (1) refused to obtain and submit to the jury a video from warehouse cameras that would have shown that there were no vehicles present to be hijacked in the vicinity when defendant was arrested; (2) failed to object to "false and manipulating" comments made by prosecutor; and (3) failed to "alert[] the Court of a mistrial when the jury was polled and the verdict was not unanimous." (Def.'s Mot. 15.) Each of these allegations lacks merit.

Counsel was not ineffective for failing to pursue a videotape showing no vehicles in the parking lot. First, there is no evidence or documentation that the videotape actually exists. (Govt.'s Resp. 12.) Defendant has never made this claim before and never sought discovery to obtain the tape. (*Id.*) Second, even if the video were available, it would not be exculpatory to defendant. As has already been discussed, defendant was charged with attempted carjacking and conspiracy to commit robbery, which were committed by the time defendant arrived at the parking lot. The absence of the truck is irrelevant to determining whether defendant took

15

substantial steps towards committing a carjacking or made an agreement to commit robbery. Defendant thus cannot show that trial counsel was ineffective in failing to pursue the video or that failing to do so was actually prejudicial to the outcome.

Defendant's second claim also fails because defendant does not provide any information regarding the nature of the "false and manipulating" comments made by prosecutor. Defendant "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations . . . . Rather, he must set forth facts to support his contention." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991) (citing *Mayberry v. Petsock*, 821 F.2d 179, 187 (3d Cir. 1987)). Without identifying which comments were improper, defendant's allegation is too vague to establish a claim of ineffectiveness, and is waived.[4]

Defendant's third allegation of ineffectiveness also lacks merit. As explained earlier in this opinion, the verdict was unanimous, despite a typographical error in the transcript. The court concluded that the verdict was confirmed by all twelve jurors and both government and defense counsel can attest to the verdict's unanimity. Trial counsel could not have moved for mistrial on that ground, and thus was not ineffective for not doing so.

### 2. Appellate Counsel Did Not Provide Ineffective Assistance

Defendant contends that appellate counsel provided constitutionally ineffective assistance

---

[4] Even if defendant's vague allegation of "false and manipulating" comments refers to prosecutor's statements that defendant objected to in his due process claims, the claim would still fail. As was explained in response to defendant's due process claim, the prosecutor did not misstate the evidence in his closing argument and his comments did not prejudice the defendant or violate his rights. Therefore, defendant's counsel did not act unreasonably by not objecting to the prosecutor's statements.

by (1) using a "1997 verdict" to state why he did not appeal defendant's § 2119 conviction even after defendant gave counsel a copy of 1999 rulings by the Supreme Court and the Third Circuit; (2) failing to search for changes in the law or more up-to-date rulings; (3) refusing to appeal defendant's Rule 29 motion challenging the sufficiency of evidence; and (4) refusing to alert the court of defendant's claim of the lack of a unanimous verdict at trial. (Def.'s Mot. 15-16.)

Defendant's first, second, and third claims contain only vague allegations without factual support and cannot establish that counsel was ineffective. *See Zettlemoyer*, 923 F.2d at 298. First, defendant does not supply any explanation regarding what the 1997 verdict or 1999 rulings state or how they affect counsel's decision to appeal defendant's convictions. Defendant also neglects to explain what counsel failed to research or what further research would have disclosed. Likewise, defendant does not explain why counsel's refusal to appeal the Rule 29 motion amounts to deficient performance and does not establish that this alleged error was actually prejudicial. Without the necessary information, defendant's claims are waived. Defendant's final claim, regarding the unanimity of the verdict, is factually incorrect and cannot be the basis of an ineffectiveness claim.

In the response to defendant's motion, the government interprets defendant's specific allegations as part of one overriding claim of ineffective assistance of counsel for failure to appeal his attempted carjacking conviction based on sufficiency of the evidence. (Govt.'s Resp. 17-21.) The government argues that "[g]iven such abundant evidence . . . an appeal based on 'insufficient evidence' would have been fruitless"; thus, "[a]ppellate counsel pursued the only reasonable grounds available on appeal." (Govt.'s Resp. 21.) Because defendant was charged with attempted carjacking, the government only had to show that he had the intent to commit the

17

crime and took a substantial step toward committing the crime.[5] *Tykarsky*, 446 F. 3d at 469. The government contends that because defendant "showed up at an industrial park at 4:16 a.m., in a van with a duct-taped license plate . . . while armed with a hammer concealed in a sock, which hammer was beside him in the van, after his co-defendant father explicitly warned him against hurting the driver, after negotiating with an undercover FBI agent (on tape) to sell the goods for $50,000," the jury had sufficient evidence to determine that he had the requisite intent for attempted carjacking. (Govt.'s Resp. 20-21.)

I agree. There was sufficient evidence for a jury to conclude that defendant was guilty of attempted carjacking by the time he arrived at the parking lot, armed with a claw hammer. Defendant could not establish that he was actually innocent of this crime. He therefore cannot establish that appellate counsel erred by not appealing on this ground or that failure to do so was prejudicial.

**IV. Conclusion**

Defendant has failed to assert any viable claims to vacate, correct, or set aside his sentence. Defendant has not demonstrated that he is actually innocent of the charges against him because there was sufficient evidence proving that he had formed an agreement to commit a robbery and took substantial steps toward completing the crime. Defendant's due process, Sixth Amendment, and judicial misconduct claims are all procedurally barred. Lastly, defendant has

---

[5] Carjacking requires that the defendant had intended to cause death or serious bodily harm in attempting to take the vehicle. 18 U.S.C. § 2119. The Supreme Court has said that a conditional intent to injure the driver only if necessary satisfies this element. *United States v. Holloway*, 526 U.S. 1, 12 (1999). Therefore, the government argues that it only had to prove that defendant had the intent to make a conditional threat and took a substantial step toward the crime. (Govt.'s Resp. 20.) "The question of whether Mershon's actions revealed such an intent to make a conditional threat was one for the jury." (*Id.*)

not established that either trial or appellate counsel acted unreasonably or provided him with ineffective assistance. For these reasons, I will deny defendant's motion under 28 U.S.C. § 2255 without an evidentiary hearing.

I must now determine if a certificate of appealability should issue. A court may issue a certificate of appealability only if the defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires that the defendant "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In claims disposed of for procedural reasons, however, the defendant needs to show that "jurists of reason would find it debatable whether the petition *states* a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id*. Here, defendant's due process and Sixth Amendment claims were all procedurally defaulted. I am persuaded that reasonable jurists would not find it debatable whether the procedural rulings are correct. I have also determined that on the basis of the record before the court, defendant's ineffective-assistance claims are without merit. I am persuaded that reasonable jurists would not find this assessment debatable or wrong. Therefore, defendant has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

An appropriate order follows.